**Arcadio ROCHA**

v.

**MISSOURI PACIFIC RAILROAD COMPANY.**

Civ. A. No. 63-C-26.

United States District Court
S. D. Texas,
Corpus Christi Division.

Nov. 20, 1963.

John A. Waller and Marvin Foster, Jr., Corpus Christi, Tex., for plaintiff.

Kleberg, Mobley, Lockett & Weil and Leslie S. Lockett, Corpus Christi, Tex., for defendant.

GARZA, District Judge.

The Plaintiff herein, Arcadio Rocha, was employed by Defendant, Missouri

Pacific Railroad Company, for many years prior to the spring of 1960, at which time Rocha held the position of carman in the Rip Track Department at Kingsville, Texas. Rocha was a member of the Brotherhood of Railroad Carmen of America. In the spring of 1960, Defendant Railroad determined to reduce the number of carmen in the Kingsville shop and to transfer these employees to the wrecker crew as provided for in its contract with the Union. Rocha was to be assigned to the wrecker crew which was called out whenever a wreck or derailment occurred upon the railroad anywhere in the Kingsville territory.

Defendant's superintendent directed Rocha, who was then about 63 years of age, to report to the Company's doctor for a physical examination to determine his physical fitness for the duties of a member of the wrecker crew. Rocha was examined by the doctor on May 26, 1960, and the doctor's report of May 28, 1960, reported findings of impaired vision and hearing, enlarged heart with systolic murmur, and arthritis. The doctor recommended that Plaintiff discontinue employment as a carman and take his pension.

Defendant's superintendent, on June 1, 1960, wrote to the Plaintiff, advising him of the doctor's findings and requesting that he arrange for his annuity under the Railroad Retirement Act.

The effective date of Plaintiff's removal from active service was June 3, 1960, and he remained on earned vacation until June 23, 1960.

Plaintiff conferred with his Union officials who proceeded to contest his removal from service with officials of Defendant Railroad, in a continuous effort to obtain reinstatement.

Although the Railroad officials agreed to subsequent physical examinations, they consistently refused to allow the Plaintiff to return to work.

The Union contract, a collective bargaining agreement governing hours of service and working conditions, with Defendant Railroad provided for adminis-

trative appeals in disputes such as this, and contained the following provision in Rule 9, sec. 1(f):

"This agreement is not intended to deny the right of the employes to use any other lawful action for the settlement of claims or grievances provided such action is instituted within 9 months of the date of the decision of the highest designated officer of the Carrier."

From the exhibits and affidavits before the Court, it appears that "the highest designated officer of the Carrier", mentioned in the above provision, was B. W. Smith, the Chief Personnel Officer of Defendant Railroad in St. Louis, Missouri. Mr. Smith declined the Union's claim for restoration to service by letter of July 20, 1961, to the General Chairman of Carmen, and on August 24, 1961, affirmed this decision. The Railroad, however, agreed to an examination of Plaintiff by a panel of three doctors consisting of a doctor chosen by the Railroad Company, a doctor chosen by the Plaintiff, and a third doctor chosen by the other two. This examination was conducted on February 14, 1962.

In a report to Defendant's superintendent, signed by the three doctors, the conclusion was reached that Plaintiff could safely do light work, but that moderately heavy physical labor or work in hazardous surroundings would be dangerous and inadvisable.

A copy of this report was transmitted to the Union's General Chairman of Carmen with a letter of February 24, 1962, by Defendant's assistant general manager, noting that from the report Plaintiff was not physically able to perform the duties of a carman on the wrecker crew, which position was reiterated in a letter of March 11, 1962.

No further administrative action was taken, and on December 4, 1962, Plaintiff filed suit for damages occasioned by his alleged wrongful discharge, in the District Court of the 105th Judicial District of Kleberg County, which suit was removed to this Court on March 27, 1963.

Defendant Railroad filed its motion for summary judgment on the following grounds:

1) Plaintiff's removal from service was proper.

2) The appeals on behalf of Plaintiff to the Railroad officials denying his reinstatement are binding on him.

3) The decision of the three doctors was against his claim and is binding upon him.

4) Any claim is barred by limitations.

The Plaintiff contends that there is an issue of fact as to whether his removal from office was proper or wrongful; that Plaintiff's attempts to settle his dispute through the administrative procedures set out in the Union contract with Defendant do not bar a suit for wrongful discharge since there is no final decision by the National Railroad Adjustment Board under the National Railway Labor Act; that the decision of the 3-doctor board was merely a step in the administrative procedure pursued by Plaintiff and his representatives which was not binding on him; and that the action is not barred by either the 2-year statute of limitations or the 9-month contractual limitation.

■ There is no longer any question that a discharged employee in Texas is not required to exhaust his administrative remedies by appealing his discharge to the National Railroad Adjustment Board, which he had a right to do under the collective bargaining agreement and the National Railway Labor Act. Although the decision of the Board is final and binding, the employee may elect not to pursue his administrative remedy for reinstatement, but may bring a common-law action for damages resulting from the wrongful discharge. 38 T.J. 2d, Master and Servant, sec. 20. See the summary of the development of the law in this area by Justice Barrow in Sarran v. Missouri Pacific Railroad Co. (Tex. Civ.App., San Antonio, 1959), reh. den.

1960, 330 S.W.2d 925. As shown in the cases cited, the Federal Courts in Texas will follow the Texas rule that it is not necessary for an employee to first exhaust his administrative remedies.

It is Plaintiff's position that this action for wrongful discharge is based on the written collective bargaining agreement, thus falling within the 4-year statute of limitation governing written contracts, Art. 5527, Vernon's Ann.Tex. Civ.St., rather than an action on the oral contract of employment which would be barred in two years, Art. 5526, V.A.T. C.S.

Further, Plaintiff urges that if the 2-year statute does apply, Rule 9, sec. 1(f), of the contract extends the period for 9 months after the decision of the highest designated officer of the Defendant refusing Plaintiff's claim for reinstatement.

Assuming that there is presented here a genuine issue of fact as to Plaintiff's removal from service being proper, and further assuming that neither the administrative decisions of Defendant's officials·nor the conclusions of the panel of doctors are final and binding upon Plaintiff; the Court must determine if this action was barred by limitations on December 4, 1962, when Plaintiff filed suit.

■ Plaintiff's cause of action for wrongful discharge arose immediately on the effective date of his removal from active service, which was June 3, 1960; and the applicable statute of limitations commenced to run on that date. Dixie Glass Co. v. Pollak (Tex.Civ.App., Houston, 1960), 341 S.W.2d 530; 38 T.J. 2d, Master and Servant, sec. 21.

■ This Court holds that this is a suit upon the oral contract of employment between Plaintiff and Defendant Railroad, and not upon the written collective bargaining agreement entered into by the Union and the Railroad. Gould v. Louisiana & Arkansas Ry. Co., 203 F.2d 238 (C.C.A. 5, 1953); Jenkins v. Thompson, 251 S.W.2d 325 (S.Ct., Mo.); Roberts v. Thompson, 107 F.Supp. 775 (E. D.Ark.W.D.).

This point has not been settled in Texas, and there is a conflict in the authorities as outlined in Roberts v. Thompson, supra; but the most reasonable view appears to be that holding a suit for wrongful discharge is based on the contract of employment which was an oral contract, and that the collective bargaining agreement in no way obligated Defendant to hire the Plaintiff nor the Plaintiff to work for Defendant.

Davis v. Rush (Tex.Civ.App., Austin, 1956), 288 S.W. 504, holds that a suit by a railroad employee for overtime wages due was based on a written contract between the railroad and the union, which provided for the rate to be paid for overtime. That case, however, is no authority for the proposition that a suit for wrongful discharge is an action upon the written agreement between the Union and the Railroad.

Unless the period of limitation was extended by agreement, this action is barred.

Rule 9, sec. 1(f), supra, of the collective bargaining agreement, providing for the use of "any other lawful action," may be considered an extension of the limitation period to allow the bringing of a suit within 9 months from the rejection of Plaintiff's claim by the highest designated officer of the Railroad, even though the action might otherwise be barred by limitation. Such provisions have been upheld as reasonable, and "[i]n the absence of statute to the contrary such contractual remedies are generally valid and enforcible. Order of United Commercial Travelers of America v. Wolfe, 331 U.S. 586, 67 S. Ct. 1355, 91 L.Ed. 1687." Hilton v. Norfolk & Western Ry. Co. (S.D., W.Va., 1961), 194 F.Supp. 915, at page 920.

The rejection of Plaintiff's claim by Defendant's chief personnel officer was made final on August 24, 1961. However, the subsequent agreement by the Railroad officials to resubmit the question of Plaintiff's physical condition to a 3-doctor board in effect suspended the running of this 9-month period until the decision of this board and its communication to the Union by letter of February 24, 1962. This letter reinstated the rejection of Plaintiff's claim and the 9-month contractual limitation began to run on that date. Thus, even if this contractual provision is taken as referring to a common-law action for damages, the Plaintiff's suit was barred when filed on December 4, 1962.

It Is, Therefore, Ordered, Adjudged and Decreed that Defendant's motion for summary judgment should be and is hereby granted, and judgment is hereby entered for Defendant that Plaintiff recover nothing. Costs are taxed against the Plaintiff.

Clerk will notify counsel.